UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES | |
| v. | CR No. 07-077-ML |
| JULIO CABRERA | |

**MEMORANDUM AND ORDER**

Mary M. Lisi, Chief United States District Judge

Julio Cabrera has filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 in the above matter. For the reasons that follow, that motion is denied.

FACTS AND BACKGROUND

On August 24, 2007, Cabrera pled guilty to a two-count Indictment charging him with distribution on two separate occasions of five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Cabrera was represented by Attorney Matthew Smith throughout all proceedings in this Court.

The pre-sentence investigation report (PSR) prepared by the United States Probation Office calculated a total offense level of 25, which included a two-level downward adjustment based on the safety valve as well as a three-level downward adjustment for acceptance of responsibility. (PSR ¶¶ 24.) Based on a criminal history category I, this yielded a guideline range of 57-71 months. (Id. ¶ 46.) The PSR also reported that Cabrera's mother, age 64, who resided in the Dominican Republic, was extremely ill and had previously lost a leg in a car accident (Id. ¶31), and that Cabrera's wife and children were on public assistance (Id. ¶ 43).

Prior to sentencing Cabrera participated in a safety valve interview with the Drug

Enforcement Agency (DEA), in which he recounted his role in the offense. Defense counsel filed a motion for a sentence below the advisory guideline range.[1]

At the sentencing hearing on November 30, 2007, counsel for Cabrera argued for a sentence of 46 months -- 11 months below the low-end of the advisory guideline range -- based in part on Cabrera's acceptance of responsibility and the low likelihood that he would re-offend. The Government requested a sentence at the low end of the applicable guideline range. After hearing argument from both sides and finding the safety valve applicable, this Court accepted defense counsel's recommendation and imposed a sentence of 46 months incarceration on each count, to run concurrently, followed by three years of supervised release. This Court further ordered that at the conclusion of his imprisonment, Cabrera was to be turned over to immigration authorities for deportation proceedings. (See Judgment [Doc. #30] at 4.)

Cabrera did not appeal his conviction or sentence. On January 8, 2008 he filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. §§ 1B1.10 and 2D1.1, on the basis of amendments to the Sentencing Guidelines affecting the calculation of the guideline range for crack cocaine offenses. That motion was denied by this Court. (Doc. # 36.)

Thereafter, Cabrera filed the instant motion to vacate, raising two claims: (1) that his counsel rendered ineffective assistance by failing to request a lower sentence on the basis that Cabrera was a deportable alien; and (2) that his sentence should be reduced on the basis of extraordinary family circumstances. The Government has filed an objection with supporting memorandum. This matter is ready for decision.[2]

---

[1] This Court continued the initial sentencing hearing on August 24, 2007, in order to permit Cabrera's counsel an opportunity to file that motion.

[2] No hearing is required in connection with any issues raised by this motion to vacate, because, as discussed infra, the files and records of this case conclusively establish that his claim is without merit.

## DISCUSSION

A. <u>Ineffective Assistance</u>

Under the two-part test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), a petitioner who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

(1) That his counsel's performance fell below an objective standard of reasonableness; and

(2) A reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

<u>Id</u>. at 687-88, 694. <u>See</u> <u>Cofske v. United States</u>, 290 F.3d 437, 441 (1st Cir. 2002).

Here, Cabrera's claim that his counsel rendered ineffective assistance by failing to request a lower sentence, based on Cabrera's status as a deportable alien, fails for several reasons. First, the claim is belied by the record. As the Government points out, counsel specifically argued – both in his sentencing memorandum and at the hearing itself – for a sentence below the applicable guideline range on the basis that Cabrera was not likely to re-offend. Moreover, this Court was fully aware of Cabrera's status as a deportable alien, and as part of his sentence ordered that Cabrera be remanded to immigration authorities for deportation upon the completion of his prison term. (<u>See</u> Judgment [Doc. #30] at 4.)

In addition, it was unlikely, based on existing case law, that a downward departure would have been available based solely on Cabrera's status as a deportable alien. Although the First Circuit

---

<u>See</u> <u>David v. United States</u>, 134 F.3d 470, 477 (1st Cir. 1998)(district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.") (internal quotations omitted). <u>See also</u> <u>Panzardi-Alverez v. United States</u>, 879 F.2d 975, 985 n.8 (1st Cir. 1989) (no hearing is required where the district judge is thoroughly familiar with the case).

has not directly addressed the issue of whether a sentence below the advisory guideline range may be granted based on the collateral consequences of a defendant's alien status,[3] other courts have held that a defendant's status as an alien subject to deportation may be a basis for downward departure only where circumstances result in an unusual or exceptional hardship in the conditions of confinement. See e.g. United States v. Farouil, 124 F.3d 838, 847 (7th Cir. 1997). Moreover, the collateral consequences of a prisoner's deportable alien status, including inability to participate in such programs as home confinement, halfway house or work- release, do not constitute conditions of confinement that are "substantially more onerous" than the Guidelines contemplated in fixing punishment for a crime. See United States v. Macedo, 406 F.3d 778, 794 (7th Cir. 2005). In other words, a defendant's status as a deportable alien is not, in and of itself, a strong ground for deviation from the guidelines range.[4]

---

[3] See United States v. Bamdele, 141 F.3d 1150, **2 (1st Cir. 1998)(Table) (noting but not deciding issue). But see United States v. Reynoso, 336 F.3d 46, 50-51 (1st Cir. 2003) (no jurisdiction to review denial of downward departure to defendant who claimed that, as deportable alien, he would not have the benefit of various ameliorative programs available to non-alien prisoners, absent evidence that district court erroneously believed it lacked the power to grant such departure)

[4] Other circuit court decisions have followed this approach. See United States v. Meza-Urtado, 351 F.3d 301, 305 (7th Cir. 2003)(denying certain end-of-sentence modifications to illegal or deportable aliens cannot be viewed as a term of imprisonment 'substantially more onerous' than the guidelines contemplate in fixing a punishment for a crime); United States v. Lopez-Salas, 266 F.3d 842, 848 (8th Cir. 2001)("[b]eing categorically excluded from receiving early release [due to alien status] is not, by itself, an unusual or atypical factor" justifying downward departure); United States v. Veloza, 83 F.3d 380, 382 (11th Cir.1996) (fact that defendant's status as an alien renders him ineligible to serve any part of his sentence in a halfway house or to receive other preferred conditions of confinement does not constitute 'extraordinary circumstances' justifying downward departure) (*overruled on other grounds by* United States v. De Varon, 175 F.3d 930 (11th Cir. 1999)(en banc); United States v. Restrepo, 999 F.2d 640, 644 (2d Cir. 1993)(downward departure not warranted due to unavailability of preferred conditions of confinement or possibility of deportation or additional period of detention pending deportation); Minh v. United States, 2006 WL 2444085, *2 n. 3 (S.D.Ga. 2006)(neither an alien's ineligibility for prison programs nor his deportability not generally in themselves sufficient grounds for downward departure).

In light of these principles, the failure of Cabrera's counsel to focus on Cabrera's status as a deportable alien as a basis for departure did not constitute deficient performance. In fact, counsel successfully advocated on behalf of Cabrera for a sentence below the guideline range and obtained a sentence of 46 months --11 months below the low end of the applicable guidelines range. For the same reason, Cabrera cannot show prejudice from his counsel's failure to argue for a downward departure based solely on his status as a deportable alien.

B.   Extraordinary Family Circumstances

Cabrera's claim of extraordinary circumstance due to family hardship likewise does not warrant relief. First, under Sentencing Guideline policy "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. See Koon v. United States, 518 U.S. 81, 95 (1996) (noting that "a defendant's family ties and responsibilities" are a "discouraged" basis for departure under the Sentencing Guidelines and that "[a] court still may depart on the basis of such a factor but only if it 'is present to a degree substantially in excess of that which ordinarily is involved in the offense.'") (quoting U.S.S.G. § 5K2.0). While this policy statement is not decisive on the issue, see United States v. Martin, 520 F.3d 87, 93 (1st Cir. 2008), it obviously can be considered by this Court in the course of exercising its sentencing discretion.

Moreover, this Court was fully aware of Cabrera's family circumstances, which were set forth in the PSR and by defense counsel. These circumstances were not sufficiently "extraordinary" to justify a further downward departure beyond what this Court already granted. See United States v. Huerta, 371 F.3d 88, 95 (2d Cir. 2003) (noting cases in which downward departure was rejected where family circumstances were "less compelling"). As the Government points out, prior to his

arrest and conviction Cabrera's mother lived in the Dominican Republic while Cabrera resided in Rhode Island. Cabrera's employment was sporadic and his wife and children were on public assistance at the time of his arrest. In addition, upon his release from incarceration, Cabrera will face deportation, which will make it difficult, if not impossible, for him to provide for his family in Rhode Island.[5]

In short, Cabrera received a sentence well below the advisory guideline range, and his family circumstances do not warrant a further departure beyond what this Court has already granted.

This Court has considered Cabrera's other arguments, including his argument that the foregoing factors, taken cumulatively, warrant relief, and finds them to be without merit.

## CONCLUSION

For all of the foregoing reasons, Cabrera's motion to vacate is DENIED and DISMISSED.

SO ORDERED:

_/s/ Mary M. Lisi_
Mary M. Lisi
Chief United States District Judge

Date: May 28, 2009

---

[5] This Court is not persuaded by the cases cited by Cabrera in support of this claim. (See Mem. in Support of Motion to Vacate at 9-10.) Each of those decisions involved family circumstances substantially different from those present here, and none involved a downward departure granted on an alternative basis, as is the case here.